# United States Tax Court

T.C. Memo. 2026-25

MICHAEL SMITH,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

_____

Docket No. 1044-25.                      Filed March 19, 2026.

_____

Michael Smith, pro se.

*Heather L. Marello* and *Julianne Gabor*, for respondent.


## MEMORANDUM OPINION

LAUBER, *Judge*: With respect to petitioner's Federal income tax for 2022, the Internal Revenue Service (IRS or respondent) determined a deficiency of $5,454 and an accuracy-related penalty under section 6662(b) and (d).[1] The issue for decision concerns the taxability of Social Security benefits petitioner received during 2022.[2] Respondent has filed a Motion for Summary Judgment, contending that there are no disputes of material fact and that he is entitled to judgment as a matter of law. We agree and accordingly will grant the Motion.

_____

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. We round monetary amounts to the nearest dollar.

[2] In his Motion respondent concedes the accuracy-related penalty. In his Petition and Response petitioner concedes that he received during 2022 unreported taxable retirement income of $1,454. We discuss these items no further.

[*2]                                    *Background*

The following facts are derived from the parties' pleadings and Motion papers, including the attached Declarations and Exhibits. *See* Rule 121(c). Petitioner resided in New York when he timely petitioned this Court.

Petitioner timely filed Form 1040, U.S. Individual Income Tax Return, for 2022, listing his occupation as "retired." But he held jobs that year with two employers: New York City Transit and Charles Stotz, Inc. His employers furnished the IRS with Forms W–2, Wage and Tax Statement, reporting total wages of $16,535 from these positions. Petitioner reported that amount as wages on his Form 1040.

At a time undisclosed by the record, petitioner suffered an allegedly disabling injury. In April 2022 he applied to the Social Security Administration (SSA) for benefits under the Social Security Disability Insurance (SSDI) program. In November 2022 the SSA issued him an award letter indicating he was entitled to retroactive SSDI benefits (in a lump sum) from March 2022 through November 2022. SSA then paid him monthly SSDI benefits in December 2022 and the first three months of 2023.

In April 2023 SSA ceased making disability payments. By letter dated March 14, 2024, it explained: "Your disability payments were stopped as of April 2023 because we learned that you had been working since April 2022. Therefore you should have never been entitled to receive [a] Social Security disability benefit." *See* 42 U.S.C. § 423(d).

Because petitioner did not qualify for SSDI benefits, he was required to (and did) reimburse SSA for the amounts he had received. He repaid the SSA $31,116 on May 26, 2023, and the balance via monthly payments during 2023 and 2024.

Petitioner did not report receipt of any Social Security benefits on his Form 1040 for 2022. The IRS received from the SSA Form SSA–1099, Social Security Benefit Statement, reporting that it had paid petitioner during 2022 SSDI benefits of $26,802. Upon examination of his return the IRS determined that he should have reported $22,782, or 85% of that total, as gross income under section 86(a).

On December 2, 2024, respondent issued petitioner a timely Notice of Deficiency that included this adjustment. Petitioner timely petitioned this Court for redetermination, contending that the SSDI benefits

[*3] he received in 2022 represented "an accidental overpayment" and were "repaid . . . in full."

On January 20, 2026, respondent filed a Motion for Summary Judgment seeking a ruling that petitioner is liable for tax on the SSDI benefits that he has admitted receiving during 2022. Petitioner timely responded to the Motion.

*Discussion*

I.    *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. *See FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001). We may grant summary judgment when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. Finding no material facts to be in genuine dispute, we conclude that the question posed by respondent's Motion may be adjudicated summarily.

II.    *Unreported Income*

The IRS's determinations in a notice of deficiency are generally presumed correct, and taxpayers bear the burden of proving them erroneous. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). In cases of unreported income, the Commissioner must establish an evidentiary foundation connecting the taxpayer with the income-producing activity, *see Portillo v. Commissioner*, 932 F.2d 1128, 1133 (5th Cir. 1991), *aff'g in part, rev'g in part and remanding* T.C. Memo. 1990-68, or demonstrate that the taxpayer actually received income, *Edwards v. Commissioner*, 680 F.2d 1268, 1270–71 (9th Cir. 1982) (per curiam). "Once the Commissioner makes the required threshold showing, the burden shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary or erroneous." *Walquist v. Commissioner*, 152 T.C. 61, 67–68 (2019) (citing *Helvering v. Taylor*, 293 U.S. 507, 515 (1935)); *see Texasgulf, Inc., & Subs. v. Commissioner*, 172 F.3d 209, 214 (2d Cir. 1999), *aff'g* 107 T.C. 51 (1996).

[*4] Unless otherwise provided, gross income includes all income from whatever source derived. § 61(a). Gross income specifically "includes social security benefits." *See* § 86(a)(1). Section 86(d)(1)(A) defines the term "social security benefit" to include "any amount received by the taxpayer by reason of entitlement to . . . a monthly benefit under title II of the Social Security Act." SSDI benefits are a monthly benefit (sometimes aggregated into a lump sum) and are paid under title II of the Social Security Act. *See* Social Security Amendments of 1956, ch. 836, § 103(a), 70 Stat. 807, 815 (codified as amended at 42 U.S.C. § 423).

Section 86 provides that up to 85% of Social Security benefits are included in gross income, with the exact percentage depending on various income thresholds. *See* § 86(a)–(c). In making the computation specified by the statutory formula, the amount of Social Security benefits a taxpayer receives during any taxable year is "reduced by any repayment made by the taxpayer *during the taxable year* of a social security benefit previously received by the taxpayer (whether or not such benefit was received during the taxable year)." § 86(d)(2)(A) (emphasis added).

The IRS calculated that $22,782—i.e., 85% of the $26,802 of SSDI benefits petitioner received during 2022—was includible in his gross income under the statutory formula. Petitioner does not challenge the mechanics of respondent's calculation. Rather, he contends that the benefits he received in 2022 should be excluded from his gross income because he was obliged to repay (and during 2023 and 2024 did repay) those benefits to SSA. As petitioner sees it, the SSDI benefits he received in 2022 are tantamount to loan proceeds that should be excluded from his income.

We understand why petitioner views his predicament in this way, but this Court is bound by the provisions of the Code. Petitioner does not dispute that he received SSDI benefits in 2022, and he must include those payments in gross income to the extent provided in section 86. His repayments during 2023 and 2024 do not affect his 2022 tax liability because the payments he received during 2022 are reduced only by "any repayment made by the taxpayer *during the taxable year*." § 86(d)(2)(A) (emphasis added). This rule is one example of the "annual accounting principle" that governs computation of taxable income generally. *See* § 451(a); *Yoklic v. Commissioner*, T.C. Memo. 2017-143, 114 T.C.M. (CCH) 75, 76 ("[S]ection 451(a) provides that for a cash basis taxpayer, the amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer."); Treas. Reg. § 1.451-1(a).

**[\*5]**   Petitioner errs in relying on the "claim of right" doctrine enunciated in *North American Oil Consolidated v. Burnet*, 286 U.S. 417 (1932). The Court there held that, "[i]f a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to [report]," even though he might later be required to refund the money. *Id.* at 424. This doctrine does not help petitioner. He clearly did receive the 2022 benefits under "a claim of right," because he applied for those benefits and SSA issued him a letter affirming his entitlement to the benefits. It was not until the following year that SSA reversed its decision after learning that he had been employed during 2022.

In effect, petitioner urges that he should be entitled to an offset or loss on account of repayments he made during 2023 and 2024. We are unable to consider the effect of a repayment made in any year other than 2022, the only year over which we have jurisdiction. Any relief to which petitioner may be entitled must be determined for the tax year in which the repayment was made. *See* § 86(d).

To implement the foregoing,

*An appropriate order and decision will be entered for respondent with respect to the deficiency and for petitioner with respect to the penalty.*